IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SCHOLLE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 13 C 3976 |
| | ) | |
| RAPAK LLC, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scholle Corporation filed this action in May 2013 based on Defendant Rapak LLC's alleged infringement of U.S. Patent No. 8,448,799. Following an evidentiary hearing on Scholle's motion for a preliminary injunction, this Court enjoined Defendant Rapak LLC from making, using, selling, or offering to sell in the United States the accused product, Rapak's Smoothie Valve (or products that include Rapak's Smoothie Valve as a component). In the wake of this Court's order enjoining Rapak, the parties have filed a series of motions and other pleadings with this Court. As explained herein, this Court: grants Dkt. No. 66, Rapak's Request To Construe More Than Five Claim Terms; grants Dkt. No. 87, Scholle's Motion for an Order That Rapak Show Cause Why It Should Not Be Held in Civil Contempt; grants in part and denies in part Dkt. No. 94, Rapak's Motion for Clarification of the Preliminary Injunction With Respect To Its Re-Designed Product; grants Dkt. No. 107, Rapak's Motion for Leave to File an Amended Counterclaim; and denies Dkt. No. 150, Rapak's Motion to Strike Scholle's Belated Claim Constructions and Supporting Expert Declaration.

**A.     Rapak's Motion Seeking Construction of More Than Five Claim Terms (Dkt. No. 66)**

This Court grants Rapak's motion to construe more than five claim terms because to introduce any further delay into the proceedings. But this Court notes that Rapak has not certified whether any of the claim terms it intends to submit for construction are outcome-determinative. The Local Patent Rules require this certification to make the parties focus on significant disputes. *See* LPR 4.1, Comment. If Rapak truly intended to "avoid future claim construction issues and focus the issues of this case" as it suggested in its brief, (Dkt. No. 68 at 9), then it not only would have identified those claim terms that it considers outcome-determinative but also would have been more specific in its motion as to how and why prosecution disclaimer affects those claim terms. (*See* Dkt. No. 68 at 8 ("Several of the terms and phrases which Rapak has identified as needed construction are impacted by those amendments.").)

This Court also notes that Rapak seeks to have this Court construe lengthy portions of the claim as opposed to discrete claim terms or phrases. Claim 1 of the '799 Patent has a number of limitations. Within each limitation, there are a number of claim terms or phrases. For example, the first limitation after the preamble of claim 1 states "a body having a top surface and a bottom surface, a spout engagement channel on the bottom surface thereof and an inner surface defining an opening extending therethrough." (*See* Dkt. No. 20-2 at 5:13-16.) Rapak seeks construction of several claim terms or phrases within this limitation, to include "a body," a "top surface," and "a spout engagement channel," and "an inner surface defining an opening extending therethrough." But Rapak also seeks to construe clauses such as "the body engaging tab extending into the recessed circumferential channel of the body to releasably sandwich, in sealed engagement, the body engagement flange of the sealing membrane between the sealing membrane engagement surface of the retaining ring, and the membrane engaging flange of the body." This clause

contains multiple claim terms or phrases, to include "body engaging tab," "recessed circumferential channel," "releasably sandwich," and "sealed engagement." This clause is representative of several purported claim terms or phrases that Rapak seeks to have construed in that it contains multiple claim terms or phrases for construction.

Despite Rapak's failure to follow the Local Patent Rules and its over-inclusive proposed claim terms or phrases for construction, this Court will consider all of Rapak's proposals. The primary reason this Court will do so is to avoid further delay. If this Court were to deny Rapak's motion, it would do so without prejudice. This means that Rapak would be free to file another motion seeking leave to propose more than five claim terms consistent with the Local Patent Rules and identifying discrete claim terms or phrases for construction. Such a motion would lead to another round of briefing on this issue, and may result in additional claim construction briefing as well. All of this would be pointless given that this Court can and will focus on the relevant claim terms or phrases within the lengthy portions of the claim identified by Rapak. Further, given that there is only one claim at issue, this Court is confident that all involved can manage the burden imposed by Rapak's request. For these reasons, this Court grants Rapak's motion.

**B.      Scholle's Motion for an Order That Rapak Show Cause (Dkt. No. 87)**

This Court orders Rapak to show cause as to why this Court should not find Rapak in civil contempt for violating this Court's preliminary injunction. This Court enjoined Rapak from making, using, selling, or offering to sell in the United States the accused product, Rapak's Smoothie Valve, or products that include Rapak's Smoothie Valve as a component on March 31, 2014. In its order, this Court instructed the parties to submit position papers concerning the appropriate bond Scholle should post under Fed. R. Civ. P. 65(c). This was necessary because

neither party addressed the issue of bond in their filings leading up to or at the preliminary injunction hearing.

A bond is not necessary for a preliminary injunction to take effect. *See Wayne Chemical, Inc. v. Columbus Agency Services Corp.*, 567 F.2d 692, 701 (7th Cir. 1977) ("Finally, it was not error for the District Court to issue the preliminary injunction without a bond. Under appropriate circumstances bond may be excused, notwithstanding the literal language of Rule 65(c)."). The purpose of a bond in this context is to compensate a defendant for losses suffered due to an erroneously issued preliminary injunction. *Ty, Inc. v. Publications International Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). A defendant cannot recover more than the bond amount for losses suffered due to an erroneously issued preliminary injunction. *Roche Diagnostics Corp. v. Medical Automation Systems, Inc.*, 646 F.3d 424, 428 (7th Cir. 2011). Accordingly, courts should take care to set the bond amount high enough to cover any losses that an enjoined defendant may suffer because of an erroneously issued preliminary injunction. *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000), *amended* 209 F.3d 1032 (7th Cir. 2000). Where appropriate, courts may increase the bond amount while the preliminary injunction is in effect. *Contra Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 1032, 1034 (7th Cir. 2000) (courts may not increase bond amount once a preliminary injunction has been reversed).

Here, it was appropriate to excuse the bond temporarily until the parties had the opportunity to brief the issue. Rapak is in no position to complain about the opportunity to present its views on the bond amount after this Court enjoined it when it failed to raise the issue on its own prior to the entry of the preliminary injunction. *See*, *e.g.*, *Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882-83 (9th Cir. 2003) (district court may set bond amount at zero when defendant fails to request a bond or to submit evidence

regarding likely damages). Recognizing not only that the preliminary injunction exposed Rapak to some risk of loss but also that there was time to set the bond amount prior to any reversal of the preliminary injunction, and understanding that parties should have the opportunity to present their views on the appropriate bond amount, *see Mead Johnson & Co.*, 201 F.3d at 887, this Court provided Rapak with an opportunity to submit evidence of its likely damages and argue for the appropriate bond amount. But this Court did not give Rapak the opportunity to delay compliance with this Court's order to stop making, using, selling, or offering to sell in the United States the accused product—and nothing in this Court's order suggests otherwise. Just as it would not have been fair to deny Rapak the chance to argue for a bond amount that would cover its potential losses, it would not have been fair to delay entry of the preliminary injunction when Scholle showed a likelihood of success on the merits. Accordingly, this Court entered the preliminary injunction and gave Rapak the opportunity to argue for an increased bond amount.

Consistent with this approach, this Court ordered Scholle to post a $1,000,000 bond during a hearing on April 10, 2014. Hr'g Tr. 7:2-15 (Apr. 10, 2014). Although this Court set this bond to eliminate any dispute or concern as to whether the preliminary injunction was in effect, Hr'g Tr. 7:6-10, it did not substantively change matters. In its position paper on the appropriate bond amount, Rapak seeks to increase the bond amount set by this Court. (Dkt. No. 120 at 3.) The only difference is that Rapak now seeks to increase the bond amount from $1,000,000 whereas the increase would have been from zero prior to April 10, 2014. Although $1,000,000 is better than nothing had the preliminary injunction been reversed before this Court increased the bond from zero, neither amount affected whether the injunction was in effect. Indeed, the minute order this Court entered stated "[t]he preliminary injunction will remain in effect." (Dkt. No. 77.)

5

Because the preliminary injunction took effect when this Court entered its order on March 31, 2014 and because Rapak does not dispute that it shipped the enjoined product after March 31, 2014, (Dkt. No. 135 at 1), this Court orders Rapak to show cause as to why this Court should not find it in contempt. "A district court may not enter an order of civil contempt unless it finds by clear and convincing evidence that a party has violated the express and unequivocal command of a court order." *In re Resource Technology Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). If a district court finds a party to be in civil contempt, the court may impose a remedial sanction to compensate the aggrieved party. *Feltner v. Title Search Co.*, 283 F.3d 838, 841 (7th Cir. 2002). The purpose of this hearing is to determine whether this Court should hold Rapak in contempt. This Court will set a date for this hearing at the next status hearing.

This Court will also determine the appropriate sanction, should this Court find Rapak to be in contempt, at the hearing. Having reviewed the parties' submissions, neither party's proposal as to the appropriate sanction is reasonable. Based on the allegations, it seems that the appropriate sanction would be a finding that any infringement by Rapak after the entry of the preliminary injunction was willful. Each party should explain whether this is an appropriate sanction should this Court find Rapak in contempt and, if not, propose an alternative.

### C. Rapak's Motion for Clarification Concerning It's Re-Designed Product (Dkt. No. 94)

This Court grants Rapak's motion for clarification to the extent that it seeks to clarify that the enjoined products are only those presented to this Court during the preliminary injunction hearing and in the pleadings related to that hearing. In patent cases, the law of the regional circuit applies when determining procedural issues not unique to patent law such as whether to clarify or modify an injunction. *Trebro Manufacturing, Inc. v. Firefly Equipment, LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) ("The grant, denial, or modification of a preliminary injunction . . . is not

unique to patent law, so this court applies the law of the regional circuit when reviewing and interpreting such a decision.") (quoting *Aevoe Corp. v. AE Tech Co., Ltd.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013)).[1] To clarify an injunction is to interpret it; to modify an injunction is to change it. *Association of Community Organizations for Reform Now v. Illinois State Board of Elections*, 75 F.3d 304, 306 (7th Cir. 1996). An enjoined defendant can always seek clarification or modification of an injunction. *United States v. Apex Oil Co., Inc.*, 579 F.3d 734, 740 (7th Cir. 2009) (discussing clarification or modification of an injunction in the context of Fed. R. Civ. P. 65(d), which aims "to minimize the occasion for follow-on proceedings to the issuance of an injunction and to protect defendants from being held in contempt for failure to follow a directive that was a trap because of its ambiguity.")

At the time this Court entered its order enjoining Rapak's Smoothie Valve, this Court knew of only one version of the product. Since then, Rapak has developed a redesigned smoothie valve that it claims does not meet what this Court previously described as the confines limitation, which requires a "retaining ring positioned entirely within the confines of the inner surface and below the top surface of the body." This redesign introduces several issues to this case, the first of which concerns nomenclature. In its brief, Rapak refers to its "Original Smoothie Valve" and "New Smoothie Valve." (*See*, *e.g.*, Dkt. No. 94 at 1.) Scholle simply refers to Rapak's "new design" and "original design." (*See*, *e.g.*, Dkt. No. 126 at 5.) Drawings attached to the parties' briefs refer to a "Smoothie Assembly – Increased Height." (*See*, *e.g.*, Dkt. No. 126-1.) But this Court is reluctant to use any of these terms to clarify the preliminary injunction because they do

---

[1] In its order enjoining Rapak, this Court wrote "Because Scholle seeks to enjoin Rapak's alleged patent infringement, Federal Circuit precedent controls." (Dkt. No. 65 at 2.) This statement reflects the "dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues" in the context of a preliminary injunction. *See Trebro*, 748 F.3d at 1165.

7

not eliminate the ambiguity caused by the existence of multiple versions of Rapak's smoothie valves. And this Court does not know whether there is a model number or some other designation specific to the smoothie valve presented to this Court during the preliminary injunction hearing and in the filings related to Scholle's preliminary injunction motion. Accordingly, this Court instructs the parties to confer and submit an appropriate designation for the smoothie valve presented during the preliminary injunction hearing and in the filings related to Scholle's preliminary injunction motion. This Court will then clarify the preliminary injunction to specify that smoothie valve as the one expressly enjoined by this Court's order.

This Court will further clarify the preliminary injunction to enjoin any Rapak smoothie valve that is not more than colorably different from the specified smoothie valve. Products that are "not more than colorably different" from an enjoined product fall within the scope of the injunction. *See*, *e.g.*, *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370-71 (Fed. Cir. 2014) (contempt is not the appropriate remedy if modified product is more than colorably different from enjoined product); *see also Aevoe Corp.*, 727 F.3d at 1382 (the question is whether the redesigned product is "colorably different" from the old product when determining whether the "redesigned product falls under the strictures of an existing injunction"). Although implicit in its prior order in view of cases such as *Aevoe Corp.*, this Court will make this principle explicit in the clarified preliminary injunction.

This Court, however, will not make a determination at this time as to whether Rapak's redesigned smoothie valve is more than colorably different from the enjoined smoothie valve or whether Rapak's redesigned smoothie valve infringes the '799 Patent. Neither party presented evidence or arguments prior to or at the preliminary injunction hearing concerning a smoothie valve with a retaining ring positioned at or above the top surface of the body. Consequently, this

Court has not made any findings concerning such a smoothie valve and will not do so now based on the record before it. Although this Court has a drawing of Rapak's redesigned smoothie valve, the parties dispute whether the change made by Rapak actually places the redesigned smoothie valve beyond the reach of the '799 Patent. Specifically, Rapak claims that it extended the retaining ring in its redesigned product so that it extends above the top surface of the body. Scholle claims that Rapak did not extend its retaining ring enough when one considers the redesign's tolerances. In other words, Scholle claims that Rapak's redesign still allows for a retaining ring that does not extend above the top surface of the body. Resolving this dispute—whether the retaining ring in Rapak's redesign extends above the top surface of the body—would require an evidentiary hearing. To the extent that either party desires to present evidence on this issue, it must file a notice to that effect at least one week prior to the show cause hearing and can present its evidence at that hearing.

As it stands, this Court's preliminary injunction covers the smoothie valve presented at the preliminary injunction hearing and versions that are not more than colorably different from that smoothie valve. This Court found that smoothie valve likely to infringe the '799 Patent based, in part, on its retaining ring positioned below the top surface of the body. Because that is the only smoothie valve for which Scholle established that it is likely to succeed on the merits, the injunction covers only smoothie valves having retaining rings positioned below the top surface of the body. Given that a preliminary injunction is an extraordinary remedy that requires a clear showing that one is entitled to such a remedy, *LifeScan Scotland, Ltd. V, Shasta Technologies, LLC*, 734 F.3d 1361, 1366 (Fed. Cir. 2013), Scholle must make a clear showing that the preliminary injunction should extend to retaining rings positioned at or above the top

surface of the body. Scholle has yet to do so. Therefore, the current injunction does not reach smoothie valves having retaining rings positioned at or above the top surface of the body.

### D. Motion for Leave to File Amended Counterclaim (Dkt. No. 107)

Rapak seeks leave to amend its counterclaims to add a counterclaim seeking a declaration that its redesigned smoothie valve does not infringe the '799 Patent. (*See* Dkt. No. 107.) This Court granted Scholle an extension of time to answer that counterclaim (Dkt. No. 138), which Scholle filed on May 22, 2014 (Dkt. No. 141). To the extent an order has not been entered concerning Rapak's motion, this Court grants Rapak's motion for leave to file an amended counterclaim.

### E. Rapak's Motion to Strike Scholle's Belated Claim Constructions and Supporting Expert Declaration (Dkt. No. 150)

Rapak seeks to strike what it describes as five "previously-undisclosed constructions" offered by Scholle. Rapak also seeks to strike the expert declaration of Robert Kimmel because Dr. Kimmel does not address the single claim term Scholle identified for construction. But nothing prevents Scholle from offering its views on the plain and ordinary meaning of a claim term as understood by a person of ordinary skill in the art, which is the meaning generally given to claim terms. Similarly, nothing prevents Scholle from disputing the claim constructions proposed by Rapak. Indeed, the Local Patent Rules contemplate an opportunity for Scholle to respond to Rapak's proposed constructions and to support its response with intrinsic and extrinsic evidence. *See* LPR 4.2(c).

The question here, however, is whether Scholle can counter Rapak's proposed constructions with previously undisclosed constructions of its own. The Local Patent Rules contemplate disclosure and meaningful discussions between the parties. Each side must not only disclose claim terms and phrases that require construction to the other side but also provide

10

proposed constructions for those terms. LPR 4.1(a). The parties must then meet and confer to narrow the issues that they must present to the court. *See* LPR 4.1(b). As a practical matter, the parties must disclose their proposed constructions to each other if they are to have meaningful discussions concerning disputed claim terms aimed at focusing the parties on "outcome-determinative or otherwise significant disputes." *See* LPR 4.1, Comment. Here, Rapak disclosed its proposed constructions to Scholle as required by the Local Patent Rules. Given that Rapak then presented those terms to this Court for construction, it is safe to say that Scholle disagreed with Rapak's proposed constructions for those terms. To the extent that Scholle did not propose its own construction, then Scholle opted to have that term construed according to its plain and ordinary meaning as understood by a person of ordinary skill in the art. Scholle's decision constrains Scholle somewhat in that it cannot propose a claim construction different from what a person of ordinary skill in the art would understand that claim term to mean. In other words, Scholle can present evidence and arguments showing that a person of ordinary skill in the art would understand a claim term to have a particular meaning. But Scholle cannot propose a previously undisclosed claim construction that extends beyond the plain and ordinary meaning of the term as understood by a person of ordinary skill in the art. That would violate the spirit of the Local Patent Rules, which contemplate early and meaningful disclosure.

That said, the principle dispute raises a question that essentially has a yes or no answer. The only construction for which Scholle proposes something other than the plain and ordinary meaning concerns the "retaining ring positioned entirely within the confines of the inner surface and below the top surface of the body" limitation. Although Scholle tries to cloak its proposed construction in terms of the understanding of a person of ordinary skill in the art, the proposed construction goes beyond the evidence presented from a purported expert in the field. Dr.

Kimmel states in his declaration that he has been asked to explain the meaning of the term "positioned" as used and applied in the mechanical engineering field. (Dkt. No. 147-1 at ¶ 3.) Dr. Kimmel defines "positioned" as "fixed in location by sufficient features so as to be immobilized with respect to other features" (Dkt. No. 147-1 at ¶ 7) and notes that the body engaging tab of the retaining ring serves as "sufficient features" to fix the retaining ring in location (Dkt. No. 147-1 at ¶ 9). These opinions are relevant to the proposed construction and, therefore, this Court denies Rapak's motion to strike them.

From these opinions, Scholle seeks the following construction: "the portions of the retaining ring that fix its location are within the circumference of the inner surface and below the top surface of the body." This construction stretches Dr. Kimmel's opinions too far as he did not opine that a person of ordinary skill in the art would understand the "retaining ring" limitation to refer only to the portions of the retaining ring that fixes its location with respect to the body. Dr. Kimmel opines only that "sufficient features" of the retaining ring to fix its location are below the top surface of the body. Therefore, Scholle cannot rely on Dr. Kimmel's opinions in support of its view that the claim term only requires portions of the retaining ring to be below the top surface of the body.

Yet Scholle also had the opportunity to respond to and undermine Rapak's proposed constructions with evidence and arguments of its own. In this context, where Rapak proposes that no portion of the retaining ring can be above the top surface of the body, disagreeing with Rapak's proposed construction necessarily means that some portion of the retaining ring can be above the top surface of the body. Thus, Scholle's disagreement with Rapak's proposed construction of this term provided sufficient notice to Rapak that Scholle believed that some of

the retaining ring could be above the top surface of the body. Therefore, there is no reason to strike Scholle's proposed construction.

Because Scholle either proposes the plain and ordinary meaning as understood by a person of ordinary skill in the art or responds to Rapak's proposed constructions for each of the claim terms at issue, this Court denies Rapak's motion to strike Scholle's proposed constructions and the Kimmel Declaration. Rapak has two weeks from the entry of this order to file its Reply Claim Construction Brief.

## **CONCLUSION**

For the reasons stated herein, this Court grants Dkt. No. 66, grants Dkt. No. 87, grants in part and denies in part Dkt. No. 94, grants Dkt. No. 107, and denies Dkt. No. 150.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 24, 2014

13